### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VIRGIL MCNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:21-cv-01064-RJC |
| vs. | ) | |
| | ) | |
| JEFFERSON-MORGAN SCHOOL | ) | |
| DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is the Motion for Preliminary Injunction (ECF No. 7) filed in this matter by Plaintiff Virgil McNett ("Plaintiff"). For the reasons discussed below, the Court will deny Plaintiff's Motion.

### I.      Background

As explained during the November 15, 2021 hearing on Plaintiff's Motion, Plaintiff filed a Complaint (ECF No. 1) against the Defendant, Jefferson-Morgan School District ("Defendant") on August 20, 2021. Plaintiff asserts claims under 42 U.S.C. § 1983 for purported violations of his First and Fourteenth Amendment rights under the United States Constitution, as well as a claim for defamation per se. At issue for purposes of the Motion for Preliminary Injunction, Plaintiff asserts that Defendant, without due process of law and in retaliation for Plaintiff's exercise of his First Amendment right to free speech, indefinitely prohibited Plaintiff from entering school district grounds and buildings and from attending or participating in school-sponsored or sanctioned events. Br. in Supp. 4, ECF No. 7.

1

Plaintiff filed his Motion for Preliminary Injunction, along with a Brief in Support, on September 27, 2021. By way of the Motion, Plaintiff seeks a preliminary injunction lifting the ban imposed by Defendant on Plaintiff pending the result of a trial in this matter. ECF No. 10. The Court has twice convened status conferences with counsel to discuss the Motion, the relief requested therein and issues related thereto, and the scheduling of a hearing and briefing on the Motion. Consistent with these discussions, Defendant filed its Brief in Opposition (ECF No. 15) on October 29, 2021, and Plaintiff filed a Reply (ECF No. 16) on November 5, 2021. The Court convened a hearing on the Motion for Preliminary Injunction on November 15, 2021. During the hearing, each party called witnesses and introduced documentary evidence. *See* ECF No. 17. Any relevant and material testimony/documentary evidence will be cited and addressed in the Court's analysis below.

Initially, there is no dispute that Defendant has implemented a ban that indefinitely prohibits Plaintiff from entering school district grounds and buildings and from attending or participating in school-sponsored or sanctioned events. The parties dispute the events and underlying circumstances that led to Plaintiff's ban from school district grounds. Plaintiff seemingly implies that his ban was the result of a single incident that occurred on September 18, 2020. *See* Compl. ¶ 14, ECF No. 1; Reply 2, ECF No. 16. Plaintiff describes the incident as follows: "On September 18, 2020, while collecting his son from the High School after a[n] [away] football game, Plaintiff calmly asked the Defendant's football coach[, Aaron Giorgi,] to resign from his position." Compl. ¶ 14, ECF No. 1. Plaintiff testified that he stood by his car and asked Mr. Giorgi if he would "please resign." Plaintiff was informed of his ban via a September 24, 2020 letter authored by Defendant's Superintendent, Joseph Orr. Compl. ¶ 15, ECF No. 1; Pl.'s

Ex. A, ECF No. 17-13.  The letter informed Plaintiff of his ban pursuant to Defendant's "Policy

904,"[1] and further provided:

> Your most recent disruptive and inappropriate behavior which occurred on
> September 18, 2020 in the presence of students and was directed at coaches, along
> with earlier instances of similar behavior at school events, have left the school
> district with no choice but to prohibit you from coming to school district grounds
> and attending events.  Bullying, intimidation, physical or verbal aggression, and the
> repeated use of profanity have no place on our campus.
>
> At a previous meeting with you held in my office, which included our
> Athletic Director, I explained to you that your behavior would have consequences
> if it was not corrected.  As the instances of that type of behavior have continued,
> you have left the school district no other option.

Pl.'s Ex. A, ECF No. 17-13.

Defendant asserts that Plaintiff's ban is the "result of a serial pattern of loud, profane,

aggressive, and disruptive conduct at District sporting events (primarily directed toward game

officials and coaches), culminating with [the September 18, 2020 incident]."  Br. in Opp'n 2, ECF

No. 15.  Mr. Orr testified as to three specific additional incidents that occurred prior to the

September 18, 2020 incident.  The first occurred when Plaintiff's son was a freshman in high

school and starting in his first varsity football game.[2]  After Plaintiff's son was removed from the

game, Plaintiff approached the team bench area where the coaches and players were located.  The

parties dispute the tenor and context of, as well as the participants involved in, the conversation

that followed, and the Court will address the same in further detail below.  Plaintiff testified that

he approached the bench area to speak to a friend on the coaching staff, and specifically not Mr.

---

[1] Policy 904 is quoted in the September 24 letter, and provides, in pertinent part: "The Board has the authority to prohibit at a school event the attendance of any individual whose conduct may constitute a disruption."  Def.'s Ex. 8, ECF No. 17-9.
[2] Plaintiff testified that this event occurred in 2018, approximately three years prior to the November 15, 2021 hearing in this matter (and thus approximately two years prior to the September 18, 2020 incident).  Mr. Orr testified that the event happened four years prior to the November 15, 2021 hearing.  This is largely irrelevant, but the Court notes that, given that there is seemingly no dispute that Plaintiff's son is now a senior in high school, Plaintiff's assertion that the event occurred in 2018 aligns more closely to the allegations in this Complaint.

Giorgio, merely to inquire as to whether his son had been injured.  It is undisputed that Plaintiff, at the request of Mr. Orr, subsequently attended a meeting with Mr. Orr and Defendant's Athletic Director, Scott Moore, as a result of this incident.  Mr. Orr testified that the purpose and scope of that meeting involved a discussion of Plaintiff's past behavior at sporting events and the conduct that is expected of individuals in attendance at Defendant's sporting events.

Mr. Orr further testified that, following this meeting, Mr. Orr personally witnessed an incident wherein Plaintiff became demonstrably and conspicuously upset following a fumble in a football game, and that Plaintiff then, in exiting the stadium, walked past Mr. Orr and used profanity in asking Mr. Orr if he was satisfied with Mr. Giorgi's coaching.  Mr. Orr asked Plaintiff to not return to the football game following this exchange.  Plaintiff and Mr. Orr also each testified as to an incident wherein Plaintiff was removed from an away football game by West Greene School District security personnel at the request of game officials while Plaintiff was a spectator at a Jefferson-Morgan football game being played at West Greene School District during the Fall, 2019 football season.  Mr. Orr also testified as to having observed Plaintiff react negatively and demonstrably to plays and calls in football games, and testified generally that he has previously received other formal and informal complaints respecting Plaintiff's attitude, behavior, demeanor, and language.

Mr. Giorgi, having accepted another head coaching position in another district, is no longer a coach for Defendant, but still teaches for Defendant Jefferson-Morgan School District.  Mr. Giorgi testified that Plaintiff regularly voiced his displeasure with the coaching staff, that Plaintiff would wait for the coaches at halftime at a visible location and stare at the coaches and shake his head in what Mr. Giorgi perceived as an attempt at intimidation, and that, following Mr. Giorgi's attempt to reconcile the issues between the two, Plaintiff told Mr. Giorgi that he liked to "ruffle

feathers."  Mr. Giorgi testified that, while complaints from concerned parents are a part of his job, Plaintiff's actions went beyond what he would typically anticipate in that regard.  With respect to the 2018 incident when Plaintiff's son was removed from a football game, Mr. Giorgi testified that, as soon as Plaintiff's son had left the field, Plaintiff approached the fence behind the bench area where the coaches and players were located and began yelling at Mr. Giorgi.  Mr. Giorgi testified that Plaintiff, in the proximity of student athletes and the coaching staff, stated that Plaintiff would climb over the fence to fight Mr. Giorgi, and that Plaintiff further stated that he would "kick [Mr. Giorgi's] ass."

With respect to the September 18, 2020 incident, Mr. Giorgi testified that Plaintiff, on school grounds and in the presence of other parents and students, paced around the first bus of coaches and players to arrive at the school following an away football game, which Defendant's team lost, in an attempt to identify whether Mr. Giorgi was present within that bus.  Plaintiff did the same with respect to the second bus to arrive, which Mr. Giorgi was aboard.  Before Mr. Giorgi could leave the bus, Mr. Giorgi was already aware of Plaintiff's presence and anticipated that Plaintiff would confront Mr. Giorgi with respect to his dissatisfaction with the coaching of the football team.  Mr. Giorgi testified that he could hear Plaintiff, who was standing between two school buses that contained student athletes and school district employees, over the sound of two running school bus engines, and that Plaintiff once again called for Mr. Giorgi's resignation.  Mr. Giorgi testified that Plaintiff did not provide an explanation for his request at that time, and that he first heard about purported concerns for player safety following the September 18, 2020 incident.

The Complaint and the Exhibits introduced in this matter indicate that, following Plaintiff's receipt of the September 24, 2020 letter informing Plaintiff of his ban, Plaintiff and Defendant

exchanged correspondences with respect to Plaintiff's ban.  These correspondences indicate that Plaintiff's ban was scheduled to be reviewed prior to the beginning of the 2021-2022 school year. *See* ECF No. 17-8; Reply at Ex. 5 and 6, ECF No. 16.  Plaintiff avers that he was informed via an August 17, 2021 email that his request that the ban be lifted was again denied, *see* Compl. ¶ 30, ECF No. 1, and the testimony and arguments presented during the November 15, 2021 hearing confirm that Plaintiff's ban remains in place.  The Court notes that the parties have previously reached agreement as to permission for Plaintiff to attend a certain event while Plaintiff's ban was in place, *see* ECF No. 14, and Mr. Orr testified at the hearing that Plaintiff had previously requested, and been granted, permission to attend a school musical while his ban was in place.  Mr. Orr further testified that Plaintiff could request, in a similar manner, permission to attend future events.[3]

Plaintiff testified that he has been denied an opportunity to speak to the school board following the implementation of the ban.  He later clarified that he did not request an exemption from the ban to attend a public school board meeting, but that he had requested a separate meeting between he and the school board.  Plaintiff testified that he has never attended a public school board meeting to discuss the coaching of the football team or player safety.  He testified that he has attended a school board meeting to discuss issues with Defendant's cheerleading program. Documentary evidence has been introduced which indicates that Plaintiff, after the September 18, 2020 incident but prior to the institution of the ban at issue, attempted to organize a group of parents to address Plaintiff's concerns with the team's performance, Mr. Giorgi's coaching, and player safety issues.  *See* Def.'s Ex. 1-3; ECF Nos. 17-2; 17-3; 17-4.

---

[3] The Court thus questions Plaintiff's assertion in his Reply that the "ban was total, providing no methods of redress, appeal, or exceptions for any situation."  Reply 2, ECF No. 16.

Plaintiff testified that his son is a senior at Defendant's high school, and that Plaintiff's girlfriend also has three children who attend school in Jefferson-Morgan School District. Plaintiff testified that, while he has not adopted his girlfriend's children and is not their legal guardian, he has, in essence, served in a parental role for his girlfriend's children for a number of years. Plaintiff asserts that the ban imposed by the school district prevents, and will continue to prevent, Plaintiff from attending school events for his children and from picking them up from school. ECF No. 17-8. The Court further notes that Plaintiff oversees a youth football league that uses Defendant's facilities, but which is not formally associated with Defendant, and that he has not been able to coach the youth football team due to the ban. Compl. ¶¶ 13; 33, ECF No. 1.

## II.      Legal Standard

With respect to the standard for the issuance of a preliminary injunction, the United States Court of Appeals for the Third Circuit has explained:

> The decision to issue a preliminary injunction is governed by a four-factor test:
>
>> To obtain an injunction, the plaintiffs had to demonstrate (1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury without relief. If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendants] more than denying relief would harm the plaintiffs and (4) whether granting relief would serve the public interest.

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (quoting *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002)). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994)). "[O]ne of the goals of

the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." *Kos Pharms.*, 369 F.3d at 708 (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir.1990)).

## III.    Discussion

Initially, the Court finds the testimony of Mr. Giorgi and Mr. Orr respecting the incidents which led to Plaintiff's ban to be credible.  In particular, the Court finds Mr. Giorgi's testimony respecting the 2018 incident and the September 18, 2020 incident to be highly credible, and, for purposes of this stage of the proceedings, the Court is inclined to credit his descriptions of those events in their entirety.  The Court notes that Mr. Giorgi, who is no longer the coach at Defendant's high school, has little incentive to falsely testify as to the incidents at issue, and his testimony, as well as Mr. Orr's, is generally corroborated by the evidence of record.  The Court finds the testimony of Plaintiff, especially with respect to the nature of the incidents at issue, to be significantly less credible.  Plaintiff's testimony in this regard finds no significant or material corroboration in the record, and is generally and specifically contradicted by the evidence before the Court in many respects.

While the Court does not question the veracity of Plaintiff's expressed concern, generally speaking, for the safety and well-being of his son and other student athletes, the evidence before the Court also indicates that the performance of the football team, and very specifically wins and losses, the factors that Plaintiff believed contributed thereto, and the scores of football games, was a clear and consistent motivation for Plaintiff's actions that led to his ban from school grounds. *See* Def.'s Ex. 1-3; ECF Nos. 17-2; 17-3; 17-4.  No one, including this Court, asserts that Plaintiff cannot express dissatisfaction with the coaching of a high school football team, especially where player safety is concerned.  However, this case does not, as Plaintiff asserts, involve a mere

viewpoint difference between Plaintiff and Defendant.  The Court must also look to the manner in which Plaintiff expressed his opinions, as well as the timing, location, and circumstances surrounding his actions.  Plaintiff's actions, as testified to, occurred on school grounds, with both students and school personnel present.  The evidence before the Court indicates that two of these events involved Plaintiff directing profanity squarely at a school official or employee, and the 2018 incident involved two express threats of violence made by Plaintiff to Mr. Giorgi.  Plaintiff attended a meeting in 2018 arising out of the 2018 incident, and, despite Mr. Orr explaining what may constitute unacceptable behavior at school district events during that meeting, all of the evidence before the Court tends to indicate that Plaintiff continued to act in, at best, a disrespectful, disruptive, and intimidating manner towards the football team coaching staff, culminating in the September 18, 2020 incident.

While Plaintiff asserts that he merely "calmly" asked Mr. Giorgi to "please resign" on September 18, 2020, the only testimony supporting the same is Plaintiff's self-serving testimony and the very limited testimony of two witnesses who were present that evening.  Courtney Bisceglia, who was present during the September 18, 2020 incident and who was called to testify by Plaintiff, testified that, when she was interviewed by Mr. Orr during Mr. Orr's investigation into the September 18, 2020 incident, she stated "you know how [Plaintiff] gets."  In this way, Ms. Bisceglia's testimony tends to contradict Plaintiff's statement that he "calmly" requested that Mr. Giorgi "please resign."  While Ms. Bisceglia testified that she meant that Plaintiff could be "passionate" and could act with excitement, and further testified that Plaintiff does not yell or express dissatisfaction directly to the coaching staff, the evidence before the Court tends to indicate that Plaintiff has displayed a pattern of loud, demonstrative, and disruptive behavior in expressing his displeasure with the trajectory of the varsity football team.

Again, the Court finds the testimony of Mr. Giorgi respecting the September 18, 2020 incident to be highly credible.  Plaintiff, while waiting on school grounds to pick up his son and in the presence of other parents and students, paced around a parking lot and looked through the windows of the first bus of coaches and players to arrive at the school following a loss in an away game in an attempt to locate Mr. Giorgi.  He did the same with respect to the second bus to arrive, and Mr. Giorgi was aware of Plaintiff's presence and the statements that were likely to follow before Mr. Giorgi even had an opportunity to exit the bus.  Mr. Giorgi could hear Plaintiff, who was standing between two school buses that contained student athletes and school district employees, over the sound of two running school bus engines.  The evidence before Court tends to establish that Plaintiff,  despite his assertions to the contrary, was neither calm nor stationary during the September 18, 2020 incident, and his behavior could certainly be described as disruptive and aggressive, considering the nature of his statements and the manner in which he made such statements, including his pacing around school buses to locate Mr. Giorgi, as well as the fact that he made such statements on school district grounds with students present.  The Court also notes that, while the September 18, 2020 incident clearly involved Plaintiff's dissatisfaction with the performance of the football team, it did not occur during a game or at a stadium, where excitement and raised voices may be anticipated.  The event occurred as the football team returned to Defendant's high school parking lot from an away football game, and parents were present at the parking lot simply to retrieve student athletes.

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir.

2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).  "School officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property." *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999) (citing *Carey v. Brown*, 447 U.S. 455, 470–71 (1980); *Goss v. Lopez*, 419 U.S. 565, 582–83 (1975)).  In a case involving very similar claims and facts to those presented in this case, the United States District for the District of New Jersey aptly explained:

> The right to free speech is not limitless.  *Carey v. Brown*, 447 U.S. 455, 470, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980).  The Supreme Court has held, for example, that even peaceful communication may be restricted through reasonable measures where it interferes with "vital governmental facilities."  *Id*.  The Constitution does not leave the government powerless to protect against disruptive conduct, even speech, in public places such as schools "that require peace and quiet to carry out their functions."  *Id*. at 470–71, 100 S.Ct. 2286 (citing *Gregory v. Chicago*, 394 U.S. 111, 118, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969) (Black, J., concurring)).

*Cunningham v. Lenape Reg'l High Dist. Bd. of Educ.*, 492 F. Supp. 2d 439, 448–49 (D.N.J. 2007).

> The *Cunningham* court further explained:

> As established, school officials are well within constitutional bounds in limiting access to school property where it is necessary to maintain tranquility.  The Defendants made all reasonable efforts to notify Plaintiff that his concerns had been or were being addressed and also that he was bound by safety procedures regulating access to the school and school officials.  When Plaintiff demonstrated a willingness to disregard these procedures, Defendants took further measures to restrict Plaintiff's access.  Even after violations of these new policies, Defendants still allowed Plaintiff access to the school and school administrators if he abided by the established guidelines.

*Cunningham*, 492 F. Supp. 2d at 449 (citations omitted) (footnote omitted).  The *Cunningham* court also held that the plaintiff in that case failed to provide any evidence suggesting a causal connection between protected speech and retaliation by the defendants, and that "the closest the Plaintiff's case comes to any federal constitutional violation is a bald assertion that his speech caused him to be barred from Defendants' property."  *Id. at* 449-50.  The *Cunningham* court also

11

explained that "the reality of our times, and indeed common sense, suggests that the public—parents included—cannot have unfettered access to the halls of learning[,]"and further held that, "[w]hile Plaintiff would have the Court believe he too was only acting in the best interests of his children, unfortunately for him, the record is rich with witnesses and written evidence of what can only be described as truly outrageous behavior." *Id.* at 450-51.

The Court agrees with the sound logic and analysis set forth in *Cunningham*, and finds that the factual record presently before the Court can only support a finding that Plaintiff has not established a likelihood of success on the merits with respect to his retaliation claim under the First Amendment. School districts are permitted to restrict access to school property where the same is necessary to maintain tranquility and to protect against disruptive conduct. The evidence before the Court, at this stage of the proceedings, displays that Defendant exercised its authority to do so, and that there was an objectively reasonable basis for the ban imposed by Defendant. The record before the Court contains evidence that indicates that Plaintiff, on school grounds and over the course of his son's high school career, directed profanity to school employees, made physical threats to Mr. Giorgi, and generally acted in an intimidating, disruptive, and aggressive manner towards the coaching staff, culminating in and including the September 18, 2020 incident. As such, the evidence before the Court does not currently support a causal connection between protected speech and Defendant's decision to ban Plaintiff. Rather, the record tends to establish that Plaintiff's disruptive and aggressive behavior resulted in restricted access to school property. Accordingly, on the record before the Court, the Court cannot find, at this stage of the proceedings, that Plaintiff has established a likelihood of success on the merits on his claim under Section 1983 for violation of his First Amendment right to free speech, and thus cannot grant injunctive relief with respect to that claim.

The Court briefly notes that, while Plaintiff's analysis in his Motion for Preliminary Injunction is seemingly entirely limited to his claim asserting a purported violation of his First Amendment right to free speech, Plaintiff also summarily states: "Under the Fourteenth Amendment to the United States Constitution, Plaintiff has a right to due process for any proceedings from a governmental authority.  Plaintiff was never granted his due process rights." Br. in Supp. 4, ECF No. 7.  Initially, the Court finds that, because Plaintiff has offered no substantive argument or analysis with respect to his claim under the Fourteenth Amendment at this juncture, he has not established a substantial likelihood of success on the merits as to that claim at this time.  Moreover, the Third Circuit has held, in a case where plaintiff parents asserted a due process claim on the basis that a school board defendant had violated their due process rights by banning the parents from a public school without a hearing and by refusing to accept a petition for a hearing, that such a claim "plainly lack[ed] merit."  *Cole v. Montague Bd. of Educ.*, 145 F. App'x 760, 762–63 (3d Cir. 2005) (citing *Lovern*, 190 F.3d at 648) for its "holding that non-custodial parent's claim that prohibiting him from entering school property violated due process is so plainly insubstantial and frivolous as to deprive a federal court of jurisdiction over the matter.").[4]  For these reasons, to the extent that Plaintiff relies on his assertion of a violation of his Fourteenth Amendment right to due process as supporting a preliminary injunction, the Court finds that Plaintiff has not established a substantial likelihood of success on the merits.[5]

---

[4] The Court notes that Plaintiff also cites, albeit for a different purpose, to a case that cited to the Third Circuit's decision in *Cole* and explained:

> Therefore, the court concludes that plaintiff was not deprived of a life, liberty, or property interest when he was banned from the school campus.  As a result, defendant was not required to provide notice or a hearing before banning plaintiff from entering school property, nor was defendant required to provide plaintiff with information on how to appeal or obtain further review of the ban.

*Justice v. Farley*, No. 5:11-CV-99-BR, 2012 WL 83945, at *3 (E.D.N.C. Jan. 11, 2012).

[5] The Court notes that Defendant has also asserted that Plaintiff will be unable to establish that the Court has subject matter jurisdiction over Plaintiff's claims because Plaintiff fails to set forth a substantial federal claim with respect to

**IV.      Conclusion**

For the reasons discussed above, the Court will deny Plaintiff's Motion for Preliminary

Injunction.  An appropriate Order of Court follows.

BY THE COURT:


s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: November 23, 2021

cc: All counsel of record

---

the alleged constitutional violations at issue.  Br. in Opp'n 8-9, ECF No. 15.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  "[C]ourts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt[,]" and "a court can raise sua sponte subject-matter jurisdiction concerns."  *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003) (citations omitted). Defendant cites to *Cunningham*, a seemingly highly analogous case, as well as *Cole* and *Lovern*, each of which is cited in the Court's analysis above, in arguing that Plaintiff will ultimately be unsuccessful in establishing that this Court has subject matter jurisdiction over Plaintiff's claims.  Br. in Opp'n 8-9, ECF No. 15.  The Court withholds making a definitive finding as to the issue of subject matter jurisdiction at this time, but anticipates considering the issue forthwith.